PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SARA E. HENDERSON (CABN 329977)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    FAX: (415) 436-7234
    Sara.Henderson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 25-cr-00042 JSC |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| JOSEPH SHINN, | |
| Defendant. | |

## INTRODUCTION

Defendant Joseph Shinn, a 46-year-old male, sought to rape a 13-year-old girl. Luckily, the child in question was actually an undercover investigator with the Humboldt County District Attorney's Office ("HCDA") operating under the alias "Emily Peterson." Beginning on or about September 30, 2024, Shinn started talking to "Emily" on Facebook Messenger and quickly learned that she was 13. Undeterred, he sent "Emily" pictures of his erect penis and requested pictures of her body. Things escalated when Shinn asked if "Emily" would "sit on [his] cock without a condom . . ." and insisted that she could trust him to prevent an unwanted pregnancy. Shinn also offered to purchase a vibrator and use it on the 13-year-old as well as perform oral sex on the child stating that she would enjoy it.

UNITED STATES' MEMO. IN SUPP. OF MOT. FOR DETENTION
25-cr-00042 JSC                                  1

Talk turned to action on October 6, 2024, when Shinn drove from Fortuna to a pre-arranged location in Eureka to have sex with the child. Eureka Police Officers arrested Shinn who later gave a *Mirandized* statement. He confirmed that he communicated with "Emily" for the purpose of engaging in sex acts with a 13-year-old. Shinn also admitted to having sexually explicit communications with another minor prior to engaging with "Emily" as well as possessing and distributing Child Sexual Abuse Material ("CSAM") that depicted children ranging from toddlers to teenagers. Finally, Shinn stated that he had a minor daughter and stepson who he denied having inappropriate sexual contact with. Messages, however, reveal that Shinn was at least willing to discuss offering his 9-year-old daughter to a man who would rape her and then he would rape his child while the man watched.[1]

Searches of Shinn's cell phone, social media accounts, and private messenger accounts corroborated the above – and more.[2] The cell phone contained pornographic images and videos depicting children engaged in or simulating sexual acts or posing in a manner that the genital area of the child was the primary focus of the image. Additionally, applications on Shinn's cell phone, namely Session and Snapchat, contained conversations about and content depicting CSAM and conversations with children as young as 11 years old.

Shinn has been in custody since November 2024 and should remain in custody. Shinn poses a danger to the community. He attempted to rape a 13-year-old girl, sent another minor sexually explicit messages and photos a week before contacting "Emily," possessed and distributed CSAM of children as young as toddlers, and messaged an individual offering his 9-year-old daughter to be raped. Shinn is also a flight risk. The case against Shinn is strong, and the charge he faces carries a 10-year mandatory minimum term of imprisonment. The government submits that there are no conditions that would adequately protect the community or ensure Shinn's presence in the future.

---

[1] Investigators conducted a forensic interview with Shinn's daughter and nothing of concern came of that interview. Local law enforcement in Humboldt County also investigated whether Shinn's stepson was a potential victim of unlawful sexual activity, but nothing of concern arose. To be clear, beyond these messages, there is no evidence to indicate Shinn allowed his daughter to be raped or engaged in inappropriate conduct with his daughter or stepson.

[2] HCDA obtained several search warrants in their investigation including warrants to search Shinn's cell phone, Snapchat, Session, and Facebook accounts.

UNITED STATES' MEMO. IN SUPP. OF MOT. FOR DETENTION
25-cr-00042 JSC                                            2

# BACKGROUND

**I.   Shinn Sent Sexually Explicit Messages and Photos to an Individual Who He Believed to be a 13-Year-Old Girl**

On or about September 30, 2024, Shinn initiated contact with "Emily Peterson" via Facebook Messenger using the alias "Jack Rifle." One of Shinn's first questions was about Emily's age, and she replied that she was just 13. He quickly followed up by requesting pictures of "Emily." Although he feigned unease in disclosing his age and identity, he made clear that he feared she would stop talking to him. Specifically, he said, "I'm scared to tell you u will block me." He not only overcame his reservations in sharing that he was 46 years old, but he upped the ante requesting more pictures of "Emily" and stating that he "would kiss [her] from head to toe." When "Emily" requested a photo of him, Shinn astutely replied that he did not want to go to jail. But that wisdom quickly faded. He shared not only a picture of his face but two photos of his erect penis. At the conclusion of this exchange, Shinn revealed that his true name was "Joe."

Throughout their seven-day long conversation, Shinn repeatedly asked where "Emily's" father was and requested that she take nude pictures when her father was not home. Shinn even offered to come help "Emily" with her homework when her father was away and asked what she would wear if he did. He showed an unusual interest in "Emily's" sexual history. Specifically, Shinn asked whether her father or his friends had sexually abused her. She replied that they had not. Shinn also asked whether "Emily" had a boyfriend before and if so, whether they had had sex. She replied in the affirmative to both questions.

Shinn took to describing what he had planned for the minor – sexual intercourse, oral copulation, and use of a vibrator. When arranging a time to meet, Shinn asked if she was on birth control. "Emily" said she was not. He asked if she "[w]ould [] still sit on my cock without a condom on still sexy" and assured "Emily" that he would not get her pregnant. Shinn offered to buy "Emily" a vibrator (which he ultimately purchased and attempted to deliver), and asked if he could use it on her. Shinn also asked "Emily" if she would let him perform oral sex and assured her that it would be pleasurable. Below are a few excerpts from Shinn's messages with "Emily."

| Sexual Intercourse | Oral Copulation | Use of Vibrator |
|---|---|---|
| [screenshot of text messages] | [screenshot of text messages] | [screenshot of text messages] |

The night before their meet-up, Shinn sent "Emily" another picture of his erect penis. On October 6, 2024, Shinn drove to "Emily's" home in downtown Eureka to do what he described in his messages. On his way, Shinn stopped at the mall in Eureka to buy a vibrator and sent a picture of it to "Emily." When he arrived, Eureka Police Officers arrested Shinn on the scene and seized the vibrator and his cell phone.[3]

**II.    Shinn Admitted to Engaging in Sexually Explicit Conversations with "Emily" and Another Minor and that He Possessed and Distributed CSAM**

Following his arrest, Shinn agreed to a recorded, custodial interview. After receiving *Miranda* warnings, Shinn admitted to communicating with "Emily" for the purpose of engaging in sex acts with a minor. He confirmed that the "Jack Rifle" Facebook account was his and that he used an alias because he did not want his family to find the account. He further admitted to knowing "Emily" was

---

[3] These items were in officers' plain view, and Shinn consented to officers' search of the vehicle.

underage. Shinn explained that he also had sexually explicit conversations with another minor – a 14-year-old girl via Snapchat. He sent the 14-year-old pictures of his genitals, and the minor sent him images and videos of her breasts, vagina, and her masturbating. As discussed further below, the Snapchat application on Shinn's cell phone contained additional communications with minors as young as 11.

Shinn also admitted to possessing CSAM. Shinn claimed that he was unsure about when he became attracted to children but started seeking CSAM approximately a year before his arrest. He typically viewed CSAM on his cell phone and frequently masturbated to CSAM. He said that he possessed 50 or more images and/or videos of CSAM. By his approximation, the CSAM depicted children as young as toddlers to teenagers.

Shinn not only possessed CSAM, but he also admitted to distributing it too. Shinn shared CSAM on an application called Session. He told officers that he sent material depicting child-on-child pornography and adult-on-child pornography. As search warrants would reveal, Shinn greatly understated the amount of CSAM he possessed and received and the number of minors he contacted.

### III. Shinn's Cell Phone and Applications Confirmed the He Contacted Multiple Minors and Possessed and Distributed CSAM

State law enforcement officials obtained Shinn's cell phone and social media and message records pursuant to search warrants. The results were sinister. First, on the cell phone itself, Shinn possessed no less than 17 CSAM videos depicting children as young as infants to prepubescent teenagers. Two of the videos portrayed sexual sadism (*i.e.*, the intentional infliction of pain for the purposes of sexual gratification), one of an infant and another of a prepubescent teenager. There were also numerous images portraying similar conduct.

Second, Shinn's phone contained all the messages with "Emily" on the Facebook messenger application.[4] Third, the Snapchat application on Shinn's phone contained numerous messages between Shinn and accounts that self-identified as minors, as young as 11. Results of the warrant issued to Snapchat revealed additional pornographic images and videos, some depicting children engaged in or

---

[4] A search warrant was issued to Meta, but the results were incomplete; they only contained a portion of the messages with "Emily".

simulating sexual acts or posing in such a manner as the genital area of the child was the primary focus of the image. Finally, the phone contained an application called "Session."[5] Shinn had approximately 56,000 messages on Session. In those messages, he sent and received hundreds of CSAM videos and images, including at least two depicting violent sodomy of an infant while the infant screamed.

Shinn also had odious conversations about what his sexual desires for children. In one exceptionally disturbing communication, Shinn discussed offering his 9-year-old daughter to an adult male to be raped by the stranger followed by raping her himself. He also sent purported images of his daughter to the individual asking "[d]o you want to fuck her?" Fortunately, investigators met with Shinn's minor daughter and did not find any evidence or signs of abuse.

## LEGAL STANDARD

The Court shall detain a defendant before trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk—the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

The Bail Reform Act mandates a rebuttable presumption of detention if there is probable cause to believe that a defendant has committed certain offenses. *See* 18 U.S.C. § 3142(e)(2) – (3). These offenses include, among others, "an offense involving a minor victim under" 18 U.S.C. § 2422 (enticement of a minor). *Id.* § 3142(e)(3). "If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

[5] A highly encrypted communication network that is popular among individuals distributing CSAM.

    (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including--

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). That said, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case *as an evidentiary finding militating against release*, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (emphasis added) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

  What's more, the rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). At a detention hearing, the government may proffer evidence sufficient to inform the court of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ARGUMENT

  Shinn cannot rebut the statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3), (e)(3)(E); *see Hir*, 517 F.3d at 1086 (explaining that the presumption is "an evidentiary finding militating against release" even when defendant proffers evidence to rebut it).

  As the above facts make clear, Shinn is a danger to the community who also poses a flight risk. *See, e.g.*, *United States v. Petersen*, No. 17-CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (revoking release order in "mere" possession case even without the presumption of detention); *United States v. Marigny*, No. 20-MJ-70755-MAG-1, 2020 WL 4260622, at *1, 3 (N.D. Cal. July 24, 2020) (revoking Judge Kim's release order because "the nature of the offense of possessing

child pornography weighs in favor of detention"); *United States v. Pullen*, No. CR 12-00829 CW, 2012 WL 10467455, at *1 (N.D. Cal. Dec. 28, 2012) (revoking release order in distribution case). Accordingly, the United States requests that the Court grant its motion to detain and remand Shinn.

## I.     Releasing Shinn Would Endanger the Community and His Children.

Foremost, Shinn poses a danger to the community and his children. He sought to rape a 13-year-old girl. "Emily" was not the first minor he sent sexually explicit messaged and pictures. Shinn messaged a 14-year-old girl on Snapchat that involved exchanging sexually explicit images and videos a week before contacting "Emily." Shinn also messaged other children as young as 11 on Snapchat. If released, it would be impossible to ensure Shinn does not seek out other child victims.

In addition to contacting minors, Shinn also likes to send and receive vile images and videos of children as young as infants. These images and videos portray the intentional infliction of pain on children for sexual gratification, child-on-child pornography, and adult-on-child pornography. Shinn also has no problem discussing the rape of his own child with strangers on the internet – going so far as sending purported pictures of her and her genitals. If released, it would be an impossible task to ensure Shinn does not have access to the internet where he seeks out minors for sexual gratification.

Finally, Shinn poses a risk to his own children.  While the investigation has not uncovered evidence that he has, to date, sexually abused his daughter or stepson, his apparent offer to allow another man to rape his daughter and then rape her himself is deeply troubling.  If released, any efforts to frustrate Shinn's desires to find children outside his home would likely be refocused to his own children.  A mere stay away order would be insufficient to protect them.

## II.    Releasing Shinn Would Fail to Reasonably Assure His Appearance.

Even if Shinn presents evidence to rebut the presumption of detention, the factors in 18 U.S.C. § 3142(g) show by a preponderance of evidence that there are no conditions that would reasonably assure Shinn's appearance at proceedings pending trial.  Shinn is facing a charge that carries a mandatory minimum term of imprisonment of 10 years and 25 years on the national sex offender registry as a tier II sex offender. *See* 18 U.S.C. § 2422(b) (mandatory minimum); 34 U.S.C. §§ 20911 (defining sex offender tiers), 20915 (registration period).  For the first time, Shinn faces prison, and the term of imprisonment he faces is lengthy.

Additionally, the strength of the evidence makes it likely that Shinn will receive these serious penalties – increasing the appeal of fleeing. *See* 18 U.S.C. § 3142(g)(2); *see, e.g.*, *United States v. Cuong Cau Dang*, No. 13-CR-486-EJD (PSG), 2013 WL 4119426, at *3 (N.D. Cal. Aug. 9, 2013) ("It is fair to conclude that [defendant] might have a heightened motivation to flee if the government's evidence is relatively strong."); *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) (citing weight of evidence to affirm detention order), *cert. denied*, No. 23-6716, 2024 WL 899487 (U.S. Mar. 4, 2024). The strength of the case is clear from the above rendition of the facts, summarized here. First, the government has the full copy of Shinn's messages to "Emily" – who was in fact an undercover investigator – replete with Shinn's statements in attempt to entice an alleged 13-year-old to have sex and other unlawful sexual acts with him. Second, Shinn was arrested at the location where he intended to rape "Emily," and he had a vibrator in his vehicle that he purchased on his way to meet "Emily." Finally, Shinn also gave a *Mirandized* statement admitting essentially all the most important incriminating facts about his criminal conduct. Thus, the evidence of Shinn's guilt is strong, and he has every incentive to flee.

While Shinn's criminal history is limited, that on its own does not support release.[6] *See United States v. Campas*, No. 24-4024, 2024 WL 1526286, at *2 (10th Cir. Apr. 9, 2024) (per curiam) (detaining defendant who tried to entice an undercover FBI agent even though the defendant had no valid passport and no convictions); *United States v. Pieper*, No. 23-50910, 2024 WL 229266, at *1 (5th Cir. Jan. 22, 2024) (per curiam) (detaining defendant despite "lack of criminal history, United States citizenship, and family ties"); *United States v. Furlow*, No. 20-CR-30050, 2020 WL 6286228, at *5 (C.D. Ill. Oct. 27, 2020) (detaining defendant who messaged undercover agent despite defendant's "remote" and limited criminal history).

If released, there are no conditions that can adequately assure he will not find a way to contact other children or share and receive CSAM online. The internet is ubiquitous, and the means of accessing it are everywhere and extraordinarily difficult to police. It would be an impossible task to ensure Shinn never accesses it while out of custody.

---

[6] In August 2020, Shinn was charged with false imprisonment in violation of California Penal Code § 236, and that matter was ultimately referred to drug court, which he successfully completed.

UNITED STATES' MEMO. IN SUPP. OF MOT. FOR DETENTION
25-cr-00042 JSC                                     9

# CONCLUSION

Shinn has no reservations engaging minors for the purpose of engaging in, at minimum, sexually explicit conversations and in this case sexual intercourse with a 13-year-old girl. He also possessed and shared dozens, if not hundreds, of images and videos of CSAM. He is a danger to the community, and because of the strength of the evidence in this case, a flight risk too. He cannot overcome the presumption in favor of detention, and even if he could, there are no conditions or combination of conditions that would protect the community or ensure his appearance as required.

Accordingly, the government respectfully requests that the Court order Defendant Joseph Shinn be detained pending trial.

DATED: February 27, 2025              Respectfully submitted,

                                      PATRICK ROBBINS
                                      Acting United States Attorney


                                      ___/s/ Sara Henderson_____
                                      SARA E. HENDERSON
                                      Assistant United States Attorney